**Hillaire WOODARD, Plaintiff–Appellant,**

v.

**NEW YORK HEALTH AND HOSPITALS CORPORATION, Defendant–Appellee.**

**No. 08–1937–cv.**

United States Court of Appeals, Second Circuit.

Oct. 29, 2009.

Hillaire Woodard, pro se, Clarksburg, MD, for Appellant.

Assistant Corporation Counsel Janet L. Zaleon for Michael A. Cardozo, Corporation Counsel, The City of New York Law Department, New York, NY, for Appellee.

PRESENT: GUIDO CALABRESI, RICHARD C. WESLEY, Circuit Judges, ALLYNE R. ROSS,* District Judge.

## SUMMARY ORDER

Appellant Hillaire Woodard, *pro se*, appeals the district court's order granting of summary judgment in favor of the New York City Health and Hospitals Corporation ("HHC"), granting HHC leave to amend its answer to add a counterclaim, and finding for HHC on its counterclaim. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review a district court's order granting summary judgment *de novo* to determine whether the district court properly concluded that there was no genuine issue as to any material fact and that the moving party was entitled to judgment as a matter of law. *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir.2003). In determining whether there are genuine issues of material fact, we draw all permissible factual inferences in favor of the nonmoving party. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir.2003). However, "conclusory statements or mere allegations [are] not sufficient to defeat a summary judgment motion." *Davis v. New York*, 316 F.3d 93, 100 (2d Cir.2002).

Woodard brought claims under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq.* With respect to her claim that HHC discriminated against her on the basis of her military status or service, in violation of 38 U.S.C. § 4311, the district court correctly determined that although there is a genuine issue of material fact as to whether HHC discriminated against her by initially failing to provide her with an 8% managerial pay increase, this claim is in any event moot because HHC initially gave her a 4% increase and subsequently granted her the remaining 4% increase retroactive to the initial date of her eligibility for the 8% increase.

With respect to her claim that HHC failed to reemploy her in a position of

---

* The Honorable Allyne R. Ross, of the United States District Court for the Eastern District of New York, sitting by designation.

similar "seniority, status, and pay, the duties of which [she was] qualified to perform" upon her return from active military duty, in violation of 38 U.S.C. § 4313(a)(2)(A), the district court correctly determined that the evidence established that Woodard was reemployed at a managerial title and salary equivalent to those she possessed before she left on active military duty, and that her duties remained managerial. Moreover, the district court correctly found that HHC permissibly reemployed Woodard in a vacant position of similar status based on its staffing needs, consistent with USERRA regulations permitting an employer "to assess what would have happened to such factors as the employee's opportunities for advancement, working conditions, job location, shift assignment, rank, responsibility, and geographical location," if she had not left on active military duty, and noting that the "reemployment position may involve transfer to another shift or location, more or less strenuous working conditions, or changed opportunities for advancement." 20 C.F.R. § 1002.194.

In her appellate brief and reply brief, Woodard argues that HHC committed "repeated USERRA violations" and engaged in behavior constituting "harassment." However, her claims before the district court were limited to the two discussed above, and this Court generally will not consider any new claims raised for the first time on appeal. *See Singleton v. Wulff*, 428 U.S. 106, 120–21, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir.2005).

Woodard also sought an order establishing how much she owed HHC pursuant to a signed Military Pay Reimbursement Agreement (the "Agreement"). The district court properly permitted HHC to amend its answer to file a counterclaim against Woodard, seeking monies owed un-der the Agreement. In November 2001, in addition to its standard military leave benefits program, HHC initiated an extended military leave benefits program. Woodard signed an Agreement indicating her participation in this program, under which HHC paid Woodard her entire HHC salary and permitted her to accrue benefits and retain her health insurance while she was on active military duty, during which time she also received her full military pay. In consideration for these benefits, Woodard agreed that she would remit to HHC the lesser of her two salaries. Upon her return to HHC in March 2004 and over the course of the next several months, Woodard disputed the amount she owed to HHC, and HHC began to deduct a percentage of her wages toward the repayment amount, pursuant to the Agreement. Woodard's employment at HHC eventually ended, and both parties agree that she owes some amount of money to HHC, although the precise amount is disputed.

The district court correctly determined that the Agreement unambiguously requires Woodard to repay the entirety of the lesser of her two salaries—in her case, her military salary. *See Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir.2002) ("The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment."). Despite Woodard's arguments to the contrary, there is no basis for her assertion that she should only be required to repay HHC a portion of her military salary, which she argues should be calculated on an hourly basis, based on the assumption that she worked twenty-four hours a day and seven days a week for the military, while she only worked seven hours a day and five days a week for HHC.

There appears to be some confusion as to the amount Woodard is required to pay HHC. The district court found that Woodard owed HHC a total amount of $140,558.07. It arrived at this figure by first determining that Woodard was required to repay HHC $144,141.98 and then reducing that amount by the $3,583.91 that Woodard had already repaid through payroll deductions. The district court also stated, however, that Woodard was entitled to rely on HHC's initial, lower calculation. This initial calculation was $137,052.97, not $144,141.98.

In addition, Woodard argues on appeal that N.Y. Military Law § 242(5–a), which went into effect after the district court's decision in her case, may affect the repayment amount she owes to HHC. HHC argues that this law does not apply to it because it is a public benefit corporation that is legally distinct from the City of New York.

Under the circumstances, we deem it appropriate to remand to the district court. We ask the district court to consider in the first instance whether the newly enacted law applies to HHC and, if the law does apply, to determine what effect it has on the amount Woodard owes to HHC. Given that we remand, we believe that Woodard, as a *pro se* plaintiff, should also be permitted to challenge the district court's calculation even though she did not previously object to this amount or file a motion for reconsideration.

For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED** in part and **REMANDED** in part.